**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| MIMEDX GROUP, INC., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 5:26-mc-1211-XR |
| | ) | |
| SURGENEX, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**SURGENEX, LLC'S OPPOSITION TO TISSUE TRANSPLANT TECHNOLOGY, LTD.'S
MOTION TO QUASH SUBPOENAS**

Surgenex, LLC ("Surgenex") opposes the Motion to Quash Subpoenas ("motion to quash") filed in this Court as a Miscellaneous Case by third-party Tissue Transplant Technology, Ltd. d/b/a Bone Bank Allografts ("Bone Bank").[1]  Bone Bank served objections to Surgenex's document and deposition subpoenas that lack specificity.  It carried that tactic over to the motion to quash.  Bone Bank provided no affidavit or evidentiary support for the purported harms it would endure if it complied with the subpoenas, and doing so in a reply would be too late.  More problematic is that Bone Bank cites not a single case in arguing that the subpoenas should be quashed.  That is likely because precedent counsels against quashing these subpoenas that have been *narrowed*, and instead, enforcing them.  The Court should deny the motion and enforce the subpoenas.

## I.    BACKGROUND

### A.    Procedural Background

MiMedx Group, Inc. ("MiMedx") filed a patent infringement suit in Arizona, asserting eight patents (the "Patents-in-Suit"), including U.S. Patent No. 8,709,494 (the "'494 Patent"), against Surgenex for its manufacture and sale of various multi-layered, placental tissue graft products or allografts ("Surgenex Litigation").  *See* Complaint, *MiMedx Grp., Inc. v. Surgenex, LLC*, No. 24-cv-3558 (D. Ariz. Oct. 10, 2025), ECF No. 1.  Fact discovery is currently set to close on March 20, 2026.

During discovery, MiMedx produced a settlement agreement that it entered into with Bone Bank and another co-defendant, Human Biologics of Texas, Ltd. ("HBT"),[2] resolving a patent

---

[1] Surgenex was unable to file its Opposition until March 4, 2026, the date on which this Miscellaneous Case was established in the Court's CM/ECF system.

[2]  Based on publicly available information, Bone Bank and HBT merged in or around October 2017. *See* Bone Bank, Letter re Integration of Bone Bank Allografts with Texas Human Biologics, *available at* https://www.globusmedical.com/bonebank/wp-content/uploads/sites/4/2021/01/BBA-THB_Intergration_Letter_OCT2017.pdf.  Given the merger, Bone Bank should also produce HBT documents that are responsive to the narrowed categories. *See* BB Mot., Ex. A at 3 (defining

infringement case between these parties in Texas ("Bone Bank Litigation"). *See, e.g.* BB Mot. at 2, 5 (acknowledging confidential settlement agreement).[3]  In that case, MiMedx also asserted the '494 Patent against Bone Bank, alleging that at least its SteriShield II™ products—"a multiple layer tissue graft made from the amnion" of a placenta—infringed the patent. *Id.* at 2; *see also* Compl. ¶¶ 28–35, 60–73, *MiMedx Grp., Inc. v. Transplant Tech., Inc.*. No. 1:14-cv-464 (W.D. Tex. May 16, 2014), ECF No. 1 ("Bone Bank Litig. Compl."). Also during discovery, MiMedx represented that it "does not have access to documents" containing Bone Bank's confidential business information. Ex. 2 (Excerpt of MiMedx Objs. & Resps. to Surgenex Document Requests) at 4.  Both the settlement agreement and the representation by MiMedx prompted Surgenex to serve document and deposition subpoenas to Bone Bank for information relevant to damages issues in the Surgenex Litigation. *See* BB Mot. at Exs. A, B.

After service of the subpoenas, on February 24, 2026, Bone Bank objected to the subpoenas in whole. *See* Ex. 3 (Bone Bank's Objs. & Resps. to Subpoenas) at 1–11. Most of the objections are boilerplate. *See id.*  On the same day, without first meeting and conferring with Surgenex, Bone Bank rushed to this Court to quash the subpoenas.[4]  On February 25, 2026, Surgenex called Bone Bank to discuss the possibility of mooting the motion to quash. Ex. 1 (Chan Decl.) ¶ 3. Surgenex followed up that call with an email, narrowing the scope of the document requests and

---

Bone Bank and HBT as one and the same).  For ease of reference, "Bone Bank" herein refers to these two collectively.

[3] If the Court desires a copy of the agreement to decide the pending motion, Surgenex will confer with MiMedx and Bone Bank to obtain consent to file it under seal for the Court's review.

[4] Bone Bank failed to comply with Local Civil Rule 7(g).  That rule required Bone Bank to first meet and confer in good faith with Surgenex to resolve or narrow the issues in the pending motion and then file its motion to quash, "certif[ying] the specific reason that no agreement could be made."  Local Civ. R. 7(g); *see also Lee v. City of Midland*, 2024 WL 4005960, at *7 (W.D. Tex. Jan. 22, 2024).  Bone Bank has done none of this.  Instead, after receiving a copy of Bone Bank's pending motion, Surgenex extended an olive branch to Bone Bank to resolve any issues between the parties without wasting this Court's scarce resources.  *See* Ex. 1 ¶¶ 3–4.

shortening the length of any deposition.  *Id.* ¶ 4; Ex. 4 (Correspondence) at 2.

Accordingly, the only categories of documents sought by Surgenex are:

1. Documents sufficient to identify the annual sales of Bone Bank's single and multi-layered placental tissue products that were at issue in *MiMedx v. Tissue Transplant Technology, Ltd.* litigation by units sold and revenue before the settlement agreement, as well as documents sufficient to identify the annual sales of all of Bone Bank's multi-layered placental tissue products by units sold and revenue after the settlement agreement;

2. Documents sufficient to identify the composition of Bone Bank's single and multi-layered placental tissue products that were at issue in *MiMedx v. Tissue Transplant Technology, Ltd.* litigation, as week as documents sufficient to identify the composition of all of Bone Bank's multi-layered placental tissue products after the settlement, such that they indicate whether a spongy/intermediate layer exists, and the uses for these products;

3. Sealed filings or unredacted expert reports from the underlying *MiMedx v. Tissue Transplant Technology, Ltd.* litigation containing Bone Bank's non-infringement/damages positions and underlying materials to support those positions; and

4. A declaration under oath by someone knowledgeable and employed at Bone Bank that the documents produced by Bone Bank in response to the Document Subpoena satisfy the authenticity requirement under Fed. R. Evid. 901, and if accurate, the business records requirements under Fed. R. Evid. 803(6).

Ex. 4 (Correspondence) at 2.  Bone Bank responded on February 26, 2026, merely stating that it still "would not produce documents or a witness without a Court Order."  *Id.* at 1.

### B.      Technological Background

The Patents-in-Suit are directed to multi-layered tissue graft products derived from the human placenta, which is a temporary organ that develops in the mother during pregnancy and provides nutrients and oxygen to her fetus.  *See* Surgenex's Opening CC Br. at 2–3, *MiMedx Grp., Inc. v. Surgenex, LLC*, No. 24-cv-3558 (D. Ariz. Oct. 10, 2025), ECF No. 78.  The placenta comprises two separable layers called the amnion and chorion.  *Id.*  In between those layers, there is an intermediate (or spongy) layer.  *Id.*  Placental allografts made from amnion and/or chorion have been well known and used as therapeutic products for over a century.  *Id.* at 3 (citing '494 Patent col. 1 ll. 26–32).

## II.   STANDARD OF REVIEW

Fed. R. Civ. P. 26(b) governs the scope of discovery for a subpoena served under Fed. R. Civ. P. 45.  *Zamora v. GC Servs., LP*, 2017 WL 1861843, at *3 (W.D. Tex. Feb. 17, 2017) (citing cases).  Rule 26(b)(1) permits a party to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  Fed. R. Civ. P. 26(b)(1).  "The scope of discovery is broad and the Federal Rules do not limit the scope of discovery to information admissible at trial."  *Sully v. Freeman*, 2017 WL 3457123, at *2 (W.D. Tex. Feb. 1, 2017).  When a subpoenaing party complies with Rule 26(b)(1), the subpoena may be quashed if it "subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(iv).  The subpoenaed party "bears the burden of making a specific objection and showing that the discovery fails the proportionality calculation mandated by Rule 26(b) by coming forward with specific information to address—insofar as that information is available to it—the factors enumerated in Rule 26(b)(1)."  *Parrish v. Premier Directional Drilling, L.P.*, 2017 WL 8774230, at *2 (W.D. Tex. Mar. 1, 2017) (citing cases); *see also Lee v. City of Midland*, 2024 WL 4005959, at *8 (W.D. Tex. Feb. 15, 2024) (requiring "an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery").  "Broad-based, non-specific objections are almost impossible to assess on their merits and fall woefully short of the burden that must be born[e] by a party making an objection."  *Galaviz v. C.R. England Inc.*, 2012 WL 1313301, at *2 (W.D. Tex. Apr. 17, 2012) (citation and quotations omitted).  Notably, the Fifth Circuit has generally instructed that "*modification of a subpoena is preferable to quashing it outright*."  *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (emphasis added) (citing cases).

## III.   ARGUMENT

### A.   Bone Bank's Objections to the Subpoenas Lack Evidentiary Support.

4

Despite Bone Bank's deficient objections, and consistent with the Fifth Circuit's instruction that "modification of a subpoena is preferable to quashing it outright," *Wiwa*, 392 F.3d at 818, Surgenex has narrowed the requests in the document subpoena to four categories. Ex. 4 at 2. The lone dispute before the Court should only be whether Surgenex's document requests target relevant evidence that is proportional to its needs in the Surgenex Litigation. Federal Circuit and other persuasive precedent—conspicuously absent from the motion—answers this in the affirmative.

  **1.  The information requested in categories 1 and 2 is relevant to damages.**

While Surgenex disputes that it infringes Patents-in-Suit in the Surgenex Litigation, the information requested in categories 1 and 2 is relevant to the issue of damages. Under 35 U.S.C. § 284, if Surgenex is found to have infringed the Patents-in-Suit, MiMedx is entitled to no less than a "reasonable royalty" in damages. A reasonable royalty "generally has two prongs: a royalty base and a royalty rate." *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014); *see also Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 27 (Fed. Cir. 2012) ("[T]he classic way to determine the reasonable royalty amount is to multiply the royalty base, which represents the revenue generated by the infringement, by the royalty rate, which represents the percentage of revenue owed to the patentee.") (citation omitted). A "reasonable method for determining a reasonable royalty is the hypothetical negotiation approach, which attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1299 (Fed. Cir. 2015) (citation and quotations omitted).

The Federal Circuit allows parties to rely on prior "settlement agreements to be considered in determining a reasonable royalty rate." *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 853 F.3d 1370, 1381 (Fed. Cir. 2017) (citing *Summit 6*, 802 F.3d at 1299–1300); *see also Elbit Sys.*

*Land & C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292, 1299 (Fed. Cir. 2019) ("We have previously explained that prior settlements can be relevant to determining damages." (citation omitted)); *In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012) ("Our cases appropriately recognize that settlement agreements can be pertinent to the issue of reasonable royalties." (citation omitted)).  Relevant settlement agreements include those where there is an overlap of parties, patents, and/or technology, between the agreements and the litigation in which those agreements will be used.  *See Elbit*, 927 F.3d at 1299–1300 (citing cases); *Rembrandt*, 853 F.3d at 1381 ("The . . . settlement agreement was relevant here because it contained a license of the very patents [the defendant] was found to infringe."); *Summit 6*, 802 F.3d at 1299–1300.

Here, Bone Bank entered into a settlement agreement with MiMedx to resolve litigation involving multi-layered placental allografts and the '494 Patent, which is one of the Patents-in-Suit.  *See* BB Mot. at 2.  Discovery into the volume of, and the revenue from, sales of Bone Bank's products, as well as their composition, may help Surgenex deduce what any comparable royalty should be in the Surgenex Litigation.  Despite Bone Bank's contention that its "sales have no bearing on a reasonable royalty" in the Surgenex Litigation, *id.* at 4, the Federal Circuit has explained otherwise, *see Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1372–73 (Fed. Cir. 2020) ("Assessing the comparability of licenses requires a consideration of whether the license at issue involves comparable technology, is economically comparable, and arises under comparable circumstances as the hypothetical negotiation."); *Elbit*, 927 F.3d at 1299–1300 ("[T]he prior licenses or settlements need to be sufficiently comparable for evidentiary purposes and any differences in circumstances must be soundly accounted for." (citation and quotations omitted)).

And, following the settlement agreement, Bone Bank has continued to market multi-layered placental allograft products.  *See* Bone Bank, AmnioArmor™ Dual Layer Amnion Patch,

6

*available at* https://www.bonebank.com/amnioarmor-dual-layer-amnion-patch/.   Discovery into their sales, as well as their composition, is also relevant to calculating a reasonable royalty.  The products that Bone Bank has continued to market may also be relevant to the issue of non-infringing alternatives.  *See Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770–71 (Fed. Cir. 2014) (explaining how non-infringing alternatives can impact a reasonable royalty analysis); *In re Ecast, Inc.*, 96 F. App'x 710, 711 (Fed. Cir. 2004).  If they are non-infringing alternatives, the products would also be pertinent to a lost profits analysis—another measure of damages that Surgenex must defend against.  *See In re Ecast, Inc.*, 96 F. App'x at 711 ("evidence of the availability of an acceptable noninfringing alternative is relevant to a lost profits analysis and to a reasonable royalty analysis" (citations omitted)); *see also Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999) (similar).

Bone Bank resists production of documents responsive to category 1, but not category 2, because Surgenex is allegedly requesting "all sales documents" for Bone Bank's multi-layered placental allografts for an extended period of time.  BB Mot. at 4.  But Surgenex is *not* seeking "all" sales documents, only those "*sufficient*" to track the sales of these allografts.  Not only is there seemingly less than a handful of these products, *see* Bone Bank Litig. Compl. ¶¶ 28–35, 60–73, but Bone Bank also likely maintains related sales documents in the ordinary course of business, and thus, they should be readily accessible with little to no burden, *see, e.g.*, *Harvey v. Caesars Ent. Operating Co., Inc.*, 2014 WL 12656552, at *2 (N.D. Miss. Feb. 4, 2014) ("The burden of production of the requested documents is not significant.  None of the requested documents are outside of the course of regular business for each of the non-parties subpoenaed.").  Bone Bank has submitted no affidavit, as it should have, suggesting otherwise.  And while the requested sales documents may span many years, that is proportional to Surgenex's needs in the Surgenex

Litigation. *Elbit*, 927 F.3d at 1299 ("[I]n using a settlement agreement . . . or in drawing the appropriate lessons from the particular settlement for the case in which it is being used, relevant circumstances—such as similarities and differences in technologies and market conditions and the state of the earlier litigation when settled—must be carefully considered."). In sum, Bone Bank should produce responsive documents to narrowed categories 1 and 2.

### 2.    MiMedx's past contentions requested in category 3 affect its credibility.

The relevance of the infringement and damages expert reports from the Bone Bank Litigation (which Bone Bank acknowledges the parties served, *see* BB Mot. at 2, and which MiMedx no longer has, *see* Ex. 2 at 4) involving the overlapping '494 Patent and the same placental allograft technology should be self-evident. MiMedx's infringement and damages contentions in these reports will reveal at least how MiMedx: (a) interprets the scope of the claims in the '494 Patent; and (b) calculates damages. Any inconsistencies or discrepancies between MiMedx's previous analyses in the Bone Bank Litigation and its current analyses in the Surgenex Litigation on infringement and damages issues can adversely impact MiMedx's credibility, and the credibility of a party is always relevant in a case. *See, e.g.*, *Fleet Connect Sols. LLC v. Waste Connections US, Inc.*, 2022 WL 2805132, at *2 (E.D. Tex. June 29, 2022); *Infernal Tech., LLC v. Microsoft Corp.*, 2019 WL 5388442, at *2 (E.D. Tex. May 3, 2019); *see also DNA Genotek Inc. v. Spectrum Sols. L.L.C.*, 2021 WL 5908985, at *2–4 (S.D. Cal. Dec. 14, 2021). To be sure, Surgenex accepts that Bone Bank likely may no longer have materials from the Bone Bank Litigation. *See* BB Mot. at 1, 2. If Bone Bank confirms that, then the dispute over these materials is moot, and the hypothetical burden of compliance is further minimized. In sum, Bone Bank should produce responsive documents to narrowed category 3 if it still has them.

### 3.    The declaration requested in category 4 is relevant to admissibility.

Documents produced by Bone Bank need to be authenticated if Surgenex is to rely on them in the Surgenex Litigation.  Fed. R. Evid. 901.  Surgenex may also need to overcome a hearsay objection to some or all the produced documents, and one viable argument is that the documents are records of regularly conducted activity (colloquially referred to as the business records exception to hearsay).  Fed. R. Evid. 803(6); *see also* Fed. R. Evid. 902(11).  Thus, the declaration is relevant and proportional to Surgenex's needs in its case with MiMedx, and it would minimize or lessen any burden associated with the deposition.  *See Davis S R Aviation, LLC v. Rolls-Royce Deutschland & Co. KG*, 2011 WL 5999332, at \*4 (W.D. Tex. Nov. 30, 2011) (ordering production of "a records custodian's declaration with the documents, consistent with Fed. R. Evid. 902(11), demonstrating that the documents are business records under Fed. R. Evid. 803(6)" or otherwise producing "a witness to authenticate the documents and address whether they are records of regularly recorded activity").  Instead of quashing the request, compliance should be ordered.

## B.    Any Deposition of Bone Bank Will be Short and Focused on Limited Topics.

"Prohibiting a deposition *ex ante* is an abnormal remedy."  *League of United Latin Am. Citizens v. Abbott*, 2022 WL 3656395, at \*2 (W.D. Tex. Aug. 23, 2022) (citing *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979)).  In the Fifth Circuit, "[i]t is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error."  *Salter*, 593 F.2d at 651.  "Therefore, a party seeking to quash a deposition subpoena bears a 'heavy burden.'"  *Abbott*, 2022 WL 3656395, at \*2 (quoting *Bucher v. Richardson Hosp. Auth.*, 160 F.R.D. 88, 92 (N.D. Tex. 1994)).  "[C]onclusory assertions of injury are insufficient."  *Id.* (alteration omitted) (quoting *Bucher*, 160 F.R.D. at 92).

But here, all Bone Bank has offered is conclusory assertions that a deposition would be unduly burdensome.  *See, e.g.*, Ex. 3 at 9–11.  That fails to meet its heavy burden of quashing the

subpoena.  Notwithstanding, Surgenex will agree to a deposition of no more than three-and-a-half hours about the following two topics: (1) the facts and circumstances surrounding the Bone Bank settlement agreement; and (2) Bone Bank's multi-layered placental allografts before and after the settlement.  Given Bone Bank's failure to demonstrate that a deposition would be unduly burdensome and Surgenex's concessions on any deposition, Bone Bank should sit for a deposition.

**C.    Conclusory Objections and a Deficient Motion to Quash are Independent Bases for the Court to Deny the Motion to Quash.**

This Court prohibits the boilerplate objections that Bone Bank has lobbed at the subpoenas. *Compare, e.g.*, Ex. 3 at 1–11, *with Lee*, 2024 WL 4005959, at *9 ("conclusory assertion that the subpoena is overbroad and unduly burdensome" provides a court "with no information about the burden involved in responding to these discovery requests" (cleaned up)).  The Court should, thus, deny the motion to quash.  *See Lee*, 2024 WL 4005959, at *9 (denying motion to quash based on conclusory objections).  Moreover, although Bone Bank contends that compliance with the subpoenas would be unduly burdensome under Fed. R. Civ. P. 45(d)(3)(iv), it has not presented "an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request." *Lee*, 2024 WL 4005959, at *8 (citing cases); *see also Medina v. Schnatter*, 2022 WL 2161712, at *4 (W.D. Tex. June 15, 2022) (declining to quash deposition where no declaration established that the deposition would be unduly burdensome).  Attorney argument is a substitute for neither.  This is another independent basis to deny the motion.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny the motion to quash, and order Bone Bank to produce: (1) responsive documents to the four narrowed document requests within 14 days of its order in accordance with the Protective Order from the Surgenex Litigation; and (2) a witness for a short deposition within 21 days after completing its production.

10

Dated: March 4, 2026

Respectfully submitted,

*/s/ Jennifer Parkers Ainsworth*_____
Jennifer Parker Ainsworth
Texas State Bar No. 00784720
Wilson, Robertson & VanDeventer, P.C.
909 ESE Loop 323, Suite 400
Tyler, TX 75701
Telephone: (903) 509-5001
Facsimile: (903) 509-5091
Email: jainsworth@wilsonlawfirm.com

Hugham Chan (*pro hac vice* forthcoming)
Rothwell, Figg, Ernst & Manbeck, P.C.
901 New York Ave., Suite 900 East
Washington, DC 20001
Telephone: (771) 717-9806
Facsimile: (202) 783-6031
Email: hchan@rfem.com

*Attorneys for Surgenex, LLC*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2026, the foregoing document was filed electronically and served through the Court's CM/ECF filing system in accordance with Local Rule CV-5.

/s/ *Jennifer Parker Ainsworth*
Jennifer Parker Ainsworth